**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DEBRA S. FERRY,                         Case No: 1:13-cv-482

         Plaintiff,                      Barrett, J.

v.                                                      Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Debra Ferry filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff first filed an application for disability insurance benefits on January 22, 2008, alleging that her chronic low back pain and other conditions became disabling beginning on April 4, 2007. Her application was denied initially and upon reconsideration, after which she timely requested an evidentiary hearing before an administrative law judge ("ALJ").  Ultimately, a total of three hearings were held.

On July 29, 2010, Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held before ALJ Thomas McNichols, II.  (Tr. 139-179).  At the conclusion of that first hearing and on the request of counsel, ALJ McNichols ordered a physical

consultative examination. (Tr. 892-905). On April 12, 2011, Plaintiff and the same VE appeared for a second hearing and again testified. (Tr. 96-138). Two weeks following the second hearing, the ALJ issued an unfavorable written decision. (Tr. 184-197). Plaintiff sought further review from the Appeals Council, which remanded after concluding that the ALJ had erred when he "posed hypothetical questions to the vocational expert …which did not include all of the limitations assessed to the claimant in the residual functional capacity in the hearing decision." (Tr. 205-206).

On March 27, 2012, ALJ McNichols convened a third hearing, at which Plaintiff and a new VE both testified. (Tr. 42-95). In addition to the new testimony, Plaintiff submitted additional medical evidence for the time period following the ALJ's 2011 decision. (Tr. 970-1029). On April 13, 2012, the ALJ issued a new unfavorable decision, (Tr. 19-33), noting that he had modified his prior RFC, and therefore reasoning that the Appeals Council's order had been rendered "moot." (Tr. 22). The Appeals Council denied Plaintiff's request for additional review, leaving the ALJ's April 13, 2012 decision as the Commissioner's final decision. Plaintiff appeals that decision to this Court.

Plaintiff was 46 years old and in the "younger individual" category on her alleged disability onset date. However, she changed age categories to "closely approaching advanced age," and ultimately, to "advanced age," at 51 years old, by the time of the ALJ's last decision. She has a twelfth grade education, has not worked since her alleged disability onset date, and can no longer perform her past relevant work as a senior training coordinator. (Tr. 32). The ALJ found that Plaintiff suffers from the following severe impairments: lumbar degenerative changes with chronic back pain; diverticulosis; pain disorder with mild depression; (since September 2008) headaches;

2

and (since April 2011) degenerative disc disease of the cervical spine. (Tr. 24). Determining that none of her impairments or combination of impairments met or medically equaled any listed impairment in the regulatory scheme, *see* 20 C.F.R. Part 404, Subpt. P, Appx. 1, the ALJ next evaluated Plaintiff's residual functional capacity ("RFC"). (Tr. 27-28).

The ALJ concluded that Plaintiff maintains the RFC to perform light work, except that she is required to have the option to stand and/or walk no more than four hours in an eight-hour workday. (Tr. 28). He also included the following non-exertional limitations:

> occasional climbing stairs; no climbing ropes/ladders/scaffolds, balancing, stooping, kneeling, crouching or crawling; no work on uneven surfaces; no more than frequent use of foot controls; use of a cane to ambulate; no exposure to hazards, including unprotected heights; no requirement to maintain concentration on a single task for longer than 15 minutes at a time; and no direct dealing with the public.

(Tr. 28). After considering Plaintiff's age, education, work experience and RFC and hearing testimony from the VE, the ALJ determined that there remain unskilled jobs that exist in significant numbers in the national economy that Plaintiff can perform, including bench assembler at the "light" level, and final assembler, microfilm document preparer, and dowel inspector at the "sedentary" level. (Tr. 32-33). Therefore, the ALJ found that Plaintiff is not disabled.

Plaintiff claims that she is disabled due to a combination of depression and anxiety, lumbar degenerative disc disease with radiculopathy, diverticulitis, restless leg syndrome, migraines, and colitis. Chiefly, she argues that she is physically disabled due to pain. She asserts that the ALJ erred: (1) in failing to adequately account for all mental limitations relating to her pain and underlying depression and/or anxiety; (2) in failing to give controlling weight to the disability opinions of two treating physicians, and

3

in failing to include all relevant limitations; (3) in adversely assessing her credibility.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability

benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Specific Errors

#### 1. Limitations in Concentration, Persistence, and/or Pace

Plaintiff first argues that the ALJ erred by failing to include sufficient limitations in the hypothetical posed to the vocational expert, despite concluding that Plaintiff suffers from "moderate" limitations in concentration, persistence, or pace. The only mental limitation that the ALJ included was that Plaintiff not be required "to maintain concentration on a single task for longer than 15 minutes at a time; and no direct dealing with the public."

A vocational expert's testimony will provide substantial evidence to affirm a non-disability finding so long as all relevant limitations are included in the description of the RFC conveyed in the hypothetical question posed to the VE. *Howard v. Com'r of Soc.*

5

*Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  Conversely, a failure to include all relevant mental limitations will render vocational expert testimony insufficient to uphold a non-disability finding.  The VE testified that if a prohibition against fast-paced work and production quotas were added to the hypothetical RFC, then all jobs at the light level of exertion would be eliminated, and only some sedentary jobs would remain that Plaintiff could perform.  (Tr. 92).  Given that Plaintiff attained the age of 50 during the course of the administrative proceedings, a limitation to sedentary work would call into play a presumption under the Grid Rules that Plaintiff became disabled on her 50th birthday.

Plaintiff contends that the ALJ's failure to include additional mental limitations requires remand under *Ealy v. Com'r*, 594 F.3d 504, 516 (6th Cir. 2010). She suggests that the inclusion of only a "concentration" limitation, without additional limitations relating to persistence and pace, constitutes reversible error.  As discussed *infra*, *Ealy* is partially but not entirely distinguishable.

In *Ealy*, the ALJ failed to include a very specific restriction by a consulting physician on whom the ALJ expressly relied.  The consultant opined that Mr. Ealy could: "1) understand and remember simple instructions, 2) sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical, 3) tolerate coworkers and supervisors in a non-public setting, and 4) adapt to routine changes in a simple work setting." *Ealy*, 594 F.3d at 509.  However, in his hypothetical to the VE, the ALJ shortened those limitations to "simple, repetitive tasks and instructions in non-public work settings." *Id.* at 516.  Focusing on the expert's opinion that the plaintiff could not sustain attention for more than two hours at a time "where speed was not critical," the Sixth Circuit reversed because "[t]he ALJ's streamlined hypothetical omitted these speed- and pace-based restrictions completely."

6

*Id.*

By contrast in this case, the ALJ was not relying upon a specific limitation offered by a treating or consulting physician when formulating Plaintiff's mental RFC limitation. Additionally, the ALJ found that Plaintiff has "moderate" limitations in concentration, persistence, "<u>or</u>" pace and not "concentration, persistence <u>and</u> pace." The concentration limitation was based *solely* on Plaintiff's use of "heavy narcotic medication for pain." (*See* Tr. 28, emphasis added); *see also* 20 C.F.R. Pat. 404, Subpt. P, App. 1, 12.00(c)(3)(regulation concerning limitations in concentration, persistence, <u>or</u> pace). Although the ALJ relied in part on the consultative psychological report of Dr. Fritsch, Dr. Fritsch reported "no significant cognitive deficits on exam," and assessed only "mild limitations overall except moderate with regard to detailed activities." (Tr. 28, citing Tr. 698, Fristch report opining that Plaintiff had only "mild" impairment relative to simple and repetitive tasks, with "more problems maintaining concentration and expected pace with detailed activities (moderate impairment….")). Thus, in contrast to *Ealy*, Dr. Fritsch offered no specific "pace" restrictions that were not included by the ALJ, and Dr. Fritch's report and the record as a whole provide at least some support for the ALJ's decision to include only a "concentration" related limitation.

Also unlike *Ealy*, the ALJ explained why he was only including a concentration limitation. Relying on the Fritsch report, he cited the lack of "significant cognitive deficits" as well as evidence that Plaintiff had successfully worked full-time in a job that required "understanding detailed operations" as a coordinator with supervisory responsibilities in a manufacturing facility, at a point in time when she suffered from the same lumbar back condition on which she based her disability claim. (Tr. 28, "The point here is that…her back condition is no different from when she was working."). The ALJ

7

further found "no substantial evidence … on which to base a low stress restriction," based on Plaintiff's lack of "overt anxiety at the psychological exam." He further cited the facts that she "has not taken any anxiety medication (only minimal evidence of medication for depression, mainly Effexor)" and "has not sought any professional mental health treatment." (Tr. 28). The ALJ acknowledged that Plaintiff takes Clonazepine, but opined that "this is not clearly documented in her few visits to a family doctor since the prior decision and certainly has not been of a long-term nature." (*Id.*).

In an argument closely related to her advocacy for greater "persistence and pace" limitations, Plaintiff challenges the ALJ's decision not to include a limitation based on her stress level. In this respect, *Ealy* is not entirely distinguishable, because Dr. Fritsch's report seems to support at least a restriction to "simple and repetitive" tasks, insofar as he states that Plaintiff would have "more problems" with "detailed" tasks. Dr. Fritsch concluded that Plaintiff's stress tolerance is "moderately impaired." (Tr. 698). Consulting psychologists also concluded that Plaintiff had "moderate" functional limitations in her ability to carry out detailed instructions, consistent with a "simple and repetitive" limitation and/or stress-related limitation. (Tr. 707-08). Defendant does not directly address this specific argument.

Plaintiff more generally faults the ALJ's factual summary of her mental health treatment, particularly for anxiety.[1] She argues that the ALJ misinterpreted her medication records, since her pain management physician prescribed both Lexapro and Ativan in 2007, and she also was prescribed clonazepam through most of 2008. While Plaintiff's records show only one visit in 2009, she argues that 2010 and 2011 records

---

[1] As Defendant points out, in her disability application forms, Plaintiff cited depression but did not mention anxiety.

8

confirm fairly regular drug treatment by her primary care physician and pain specialist for both depression and anxiety.  She admits that she did not have any "formal psychiatric or psychological treatment," but argues that she provided "several valid reasons…to explain why she was not involved in more specialized treatment."  (Doc. 11 at 13).

Defendant partially concedes the factual error, insofar as the record confirms that Plaintiff has been prescribed anti-anxiety medications such as Klonopin and Clonazepam for a much longer period than indicated by the ALJ.  However, Defendant argues that the error was harmless, because "there is no indication that these medications did not effectively control" Plaintiff's anxiety.

The issue concerning the impact of the ALJ's misstatement of Plaintiff's treatment records is relatively close.  None of Plaintiff's treating doctors formally diagnosed her with anxiety (as opposed to depression) and none referred her to a psychiatrist or psychologist for specialized mental health treatment.  Dr. Fritsch's diagnosis of only depression and overall "mild" impairment, (Tr. 698), suggest that the understatement of the Plaintiff's medication history may not have been that significant.  Nevertheless, when viewed as a whole and considered with the Plaintiff's second assertion of error, the combination of the ALJ's misstatement concerning Plaintiff's medication history and his failure to include a restriction to "simple" work both favor remand.

### 2. Weight Given to Opinion Evidence

Plaintiff's second assertion of error, in two parts, is that the ALJ erred in evaluating the opinion evidence.  She first argues that the ALJ should have given controlling weight to the opinions of two treating physicians: Drs. Glickfield and Reddy.

9

Second, she argues that the ALJ erred by failing to include in her RFC one of the key limitations offered by an examining consultant, Dr. Swedberg. Both arguments have merit.

### a. Treating Physician Opinions

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). If an ALJ does not give controlling weight to a treating physician's opinion, he or she must articulate the weight given to the opinion, and provide "good reasons" for that decision.

> If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with

10

the record as a whole, and any specialization of the treating physician. *Blakley v. Com'r Of Soc. Sec.*, 581 F.3d at 406 (additional citations omitted). In addition, the opinions of examining consultants are generally entitled to greater weight than are the opinions of non-examining consultants. *See* 20 C.F.R.§1527(c)(1); *see also Gayheart v. Com'r*, 710 F.3d 365, 375-376 (6th Cir. 2013). Plaintiff argues that the reasons provided by the ALJ do not satisfy the "good reasons" standard contained in 20 C.F.R. §404.1527(c)(2).

Both of Plaintiff's treating physicians, a family physician and a pain doctor, opined that Plaintiff could sit for two hours or fewer total in an eight-hour workday, could stand/walk for the same period of time, and could only occasionally lift up to ten pounds. (Tr. 788-792, Tr. 793-798) Such extreme limitations, if accepted, would have rendered Plaintiff disabled.

> The ALJ assessed the two treating physician opinions as follows:
>
> There is a January 2010 assessment by Dr. Glickfield, the treating family physician, to the effect that the claimant could not sustain even sedentary work due to her impairments. (20F). He is not an orthopedic specialist, and his records show that he does little or nothing with regard to her back condition, which has been handled throughout this record by successive pain management doctors. His records also reflect little in terms of details or discussions with regard to her mental health condition. He prescribed medication, Effexor…which is a relatively mild medication for depression, and she was not on any psychotropic drugs. He essentially accepted her complaints of pain, and there was no evidence that he probed below the surface to determine the exact etiology of this or even performed any extensive physical exams. The physical exam by Dr. Swedberg, the consulting examiner, was the most comprehensive of this record, and he assessed a reduced range of light work, which is the general basis for the physical restrictions. Accordingly, no controlling weight is given Dr. Glickfield's January 2010 opinion. No deference is given since it is not supported by an orthopedic specialist or neurologist.
>
> Further evidence since the prior decision includes a note dated April 2011 by Dr. Glickfield indicating that the claimant could not lift more than 20 pounds and had significant postural limitations. …There is no obvious conflict with the residual functional capacity and that assessment.

11

> Dr. Reddy, a treating pain management specialist, completed an assessment in January 2010 to the effect that the claimant could not sustain even sedentary work. (21F).  She cited discitis as one basis, but the discitis … was diagnosed, treated, and resolved in April 2007.  The condition was long resolved by even the first visit with Dr. Reddy in late 2008.  The MRI in August 2009 showed "mild disc bulge at L4-L5. Otherwise no significant discogenic disease" and no mention of facet or joint disease….MRI in April 2011 said that the findings were "similar in appearance to prior study" referring to the August 2009 study.

(Tr.29).

The ALJ pointed out discrepancies in the record, such as a statement by Dr. Reddy that Plaintiff had pain in her left leg, contrasted with a 2010 EMG that showed mild chronic radiculopathy on the right.  Dr. Reddy opined that Plaintiff had intractable headaches, "but there is nothing…to support that allegation, which is a subjective complaint…that arose more than a year after the alleged onset date." (Tr. 30).  The ALJ also noted that Plaintiff had not been diagnosed with migraines,[2] that she told a consulting examiner that she had two headaches a month lasting one to two days, and that other records showed she reported her headaches were helped with medication. (Tr. 30).  The ALJ concluded:

> Overall, the medical diagnoses given by Dr. Reddy in support of her assessment were unsupported by objective diagnostic testing and claimant's surgical history.  The claimant may have some chronic lumbar pain but there is clearly no serious underlying disc, degenerative disease or neurological deficits to support such an extreme physical limitation as assessed by Dr. Reddy.  Accordingly, no controlling weight is given.  No deference is given because there is no orthopedic, surgical, or neurological specialist corroborating her diagnoses or functional limitations.

(Tr. 30).  Even though the ALJ acknowledged subsequent records indicating that Plaintiff has degenerative disc disease in her cervical spine, he found "no evidence that

---

[2]This appears to be an additional misstatement of the record, insofar as Dr. Swedberg diagnosed migraines during his September 2010 consulting examination. (Tr. 902-904).

12

she sought evaluation by an orthopedic or neurological specialist/surgeon," and "no indication in the pain treatment records of Dr. Reddy of significant change in treatment that was already being done for the low back complaints." (Tr. 30).

As with her mental RFC, Plaintiff asserts both legal and factual errors in the ALJ's analysis. In terms of legal error, she points out that the ALJ did not specifically state, in language that is nearly uniform in social security decisions, whether he was giving the opinions of Drs. Glickfield and Reddy "some," "partial," "little," or "no" weight. Instead, after explaining why he was giving the opinions "no *controlling* weight," the ALJ merely stated that he was giving the opinions "no deference." (Tr. 29-30, emphasis added). Plaintiff acknowledges that one possible construction of the "no deference" language would be to assume that the ALJ was giving the opinions "no weight." However, she argues that read in context, the statement only indicates that the ALJ is declining to give deferential controlling weight to the opinions, and does not represent an explanation of what weight he is according to them. Plaintiff asserts that the ALJ's failure to better articulate the weight given to treating physician opinions requires remand, because it leaves the record ambiguous as to "how much weight" was given. The Defendant does not directly respond to this argument.

Plaintiff additionally argues that the ALJ made several factual errors in his analysis. For example, although he criticized Dr. Reddy's reference to discitis, her remarks reflect her awareness that Plaintiff's discitis had resolved, *see e.g.*, "h/o discitis requiring 5 months of IV antibiotics," (Tr. 793). Additionally, she identified other diagnoses including facet joint syndrome, migraines, and stenosis as supporting the functional limitations in her opinion. And, although the ALJ stated that there was "no" evidence to support Dr. Reddy's findings of spinal stenosis or facet joint problems, Dr.

Michelle Tabao, Dr. Stephen Pledger (a neurosurgeon and/or orthopedist), and Dr. Howard Seltzman also diagnosed stenosis and/or facet joint pain. (Tr. 618, 621, 643-644, 734, 736, 738, 839). A June 2008 lumbar MRI also confirmed the existence of "mild acquired type spinal stenotic changes seen at L4-L5." (Tr. 741). Defendant also fails to directly respond to these arguments, instead merely arguing that substantial evidence supports the ALJ's decision to discount the opinions of Plaintiff's treating physicians. These points of error become more persuasive when added to other errors supporting remand, including a significant error involving a consulting examining physician.

### b. Examining Consultant Dr. Swedberg

The ALJ placed the most weight on the consulting opinion of examining physician Dr. Swedberg. (Tr. 29, indicating that Dr. Swedberg's September 2010 "comprehensive" exam and assessment of "a reduced range of light work" provides "the general basis for the physical restrictions."). Even if this Court were to affirm the ALJ's rejection of the opinions of her treating physicians, Plaintiff argues that remand is required because the ALJ failed to include all relevant portions of Dr. Swedberg's opinions in his physical RFC, without any explanation of why he omitted a key restriction. Specifically, Dr. Swedberg limited Plaintiff to standing three hours per day and to walking only one hour per day (Tr. 987), but the ALJ found that Plaintiff could stand "and/or" walk four hours per day. (Tr. 28). The undersigned concludes that this error, standing alone, would require remand.

Defendant contends in response that the ALJ "need not have relied on any particular opinion in its entirety," since it remains the ALJ's province to determine a plaintiff's RFC. (Doc. 14 at 8). However, the RFC must be supported by substantial

14

evidence in the record as a whole. An ALJ may not act as his or her own medical expert.  When an ALJ omits or alters a critical portion of the medical opinion on which he chiefly relied, as the ALJ did here, he should explain his reasoning and/or point to alternative evidence in the record that supports his opinion.  Here, it is uncontested that the ALJ did not offer *any* explanation.  The lack of inclusion of the limitation does not appear to be supported by any evidence, medical or otherwise.

### 3. Subjective Complaints of Pain - Credibility

In her third and last assertion of error, Plaintiff complains that the ALJ's credibility assessment is not supported by substantial evidence.  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

In his 2012 decision, the ALJ found Plaintiff to be "not entirely credible" for several reasons, including the fact that "she gained custody of her autistic granddaughter apparently at some point after the prior decision," and "must do some things around the house [contrary to her testimony] since her husband is disabled by back impairment, and her daughter-in-law does not live with her."  (Doc. 27).  The ALJ referred to a number of additional inconsistencies elsewhere in his opinion.

15

In her argument to this Court, Plaintiff challenges only some of those alleged inconsistencies, claiming that the ALJ overlooked evidence or misstated the record. For example, even though the ALJ (somewhat surprisingly) included the use of a cane in Plaintiff's RFC, he was critical of Plaintiff's use of that device. He stated that the cane had not been prescribed by any "orthopedic or other back specialist,"[3] and declaring that the basis for the cane was "unclear." (Tr. 26). He stated that Dr. Swedberg's finding that the cane was medically necessary lacked an "adequate objective basis." (*Id.*). However, Dr. Swedberg's report contains numerous findings that objectively support Plaintiff's use of a cane, including her unsteady gait, inability to squat or walk heal to toe, and other clinical examination findings. (Tr. 903-904). Based on the undersigned's review of the same evidence, this Court might have evaluated Plaintiff's credibility differently. However, the undersigned cannot say – if credibility alone were the sole challenge presented – that the ALJ's assessment did not fall within an acceptable zone of choice. On the record presented, however, other errors do exist. Therefore reconsideration of the credibility issue is recommended, if for no other reason than the possibility that the other errors factored into the credibility determination.

### III. Conclusion and Recommendation

For the reasons discussed above, the undersigned finds that remand is required. Therefore, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED** and remanded to the Commissioner for further review under sentence four of 42 U.S.C. §405(g), in accordance with this Report and Recommendation. As no other matters remain pending, this case should be **CLOSED**.

---

[3] Records suggest it was prescribed by Dr. Reddy.

16

                                                 *s/ Stephanie K. Bowman*
                                                 Stephanie K. Bowman
                                                 United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| DEBRA S. FERRY, | Case No: 1:13-cv-482 |
| Plaintiff, | Barrett, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).